Argued and submitted July 3, affirmed December 18, 1979

# FISH AND WILDLIFE DEPARTMENT,
*Respondent,*
*v.*
# LAND CONSERVATION AND DEVELOPMENT · COMMISSION, et al,
*Respondents,*
## LEASON,
*Petitioner.*

## (CA No. 10171, SC No. 26018)
603 P2d 1391

John Wiley Gould, of Spears, Lubersky, Campbell & Bledsoe, Portland, argued the cause and filed the petition and brief for petitioner.

Jennifer J. Johnson, Portland, argued the cause for respondent Fish and Wildlife Department. With her on the brief were Gregory R. Mowe, Stephen T. Janik, and Davies, Biggs, Strayer, Stoel and Boley, Special Assistant Attorney General, Portland.

James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem, for respondents Oregon Land Conservation and Development Commission, Dorothy Anderson, J. W. Forrester, Dick Gervais, Lorin Jacobs, John Mosser, James Smart, Anne Squier and Dennis Fuller, in their capacity as members of the Oregon Land Conservation and Development Commission; and Oregon Land Conservation and Development Department, Wes Kvarstan, Director.

Louis L. Selken, District Attorney, and William E. McCann, Deputy District Attorney, Bend, for respondent Deschutes County.

HOLMAN, J.

## HOLMAN, J.

The Department of Fish and Wildlife (herein the department) petitioned the Land Conservation and Development Commission (LCDC) to review approval of a plat by the Planning Commission of Deschutes County (the planning commission). The department contended that the planning commission's decision did not comply with LCDC Statewide Goal No. 5. The department had argued vigorously before the planning commission against approval of the plat but had not prosecuted an appeal to the Deschutes Board of County Commissioners when it lost. Attorneys for Deschutes County contended this constituted a failure to exhaust administrative remedies and should bar review by LCDC.[1] The department contended it was not obliged to exhaust other remedies before seeking a decision from LCDC, that a local appeal would have been futile and that it had been informed by attorneys for the county that no appeal to the county commission was available. LCDC agreed with the county and dismissed.[2]

---

[1] A matter not addressed by the litigants is whether, under the appropriate ordinances of Deschutes County, the planning commission is empowered to make a *final determination* at the county level in the absence of an appeal to the board of commissioners but where review is taken to LCDC. LCDC's review is only of final county action. ORS 197.300(1)(b) and (2). The parties have, we believe, correctly assumed a planning board decision constitutes final county action in this case. However, whether the planning commission can make a final determination at the county level in the absence of a hearing by the board of commissioners is governed by the appropriate county ordinance. Therefore, before review is attempted to LCDC from planning commission action in cases similar to this, it should be made certain that what has been rendered is a final determination at the county level, and not merely a recommendation by the planning commission to the board of county commissioners.

[2] The petition was heard in conjunction with another, similar one involving five plats, LCDC No. 77-017. The disposition was the same. Appeals were taken together to the Court of Appeals where LCDC was reversed and ordered to hear the petition. Only one plat is the subject of this decision because respondent in the other case involving the other plats did not seek review of the Court of Appeals' decision.

LCDC agreed with the county that exhaustion was required. However, on the merits, its hearings officer had concluded that the goal had not been correctly applied.

[205]

The department obtained review to the Court of Appeals. At that level, the county ceased to play an active role and the developer, an intervenor in the LCDC proceeding, prosecuted the litigation. The Court of Appeals held that LCDC had the power to promulgate a rule requiring exhaustion but that it had not done so. Absent a rule, the court held, LCDC could not impose the requirement. Nevertheless, the court applied an exhaustion test on its own. It concluded that the department was excused from taking an appeal because one would have been futile in the light of prior refusal by the board of commissioners to apply the goals.

The contest between the department and the board of commissioners regarding Goal No. 5 is complicated, involving a number of plats, numerous appearances by the department, ambiguous conduct by the board of commissioners, and a change in the ordinances on the eve of approval of this plat. The Court of Appeals stated the facts in its opinion. It is unnecessary to rehearse them in light of this court's resolution of the case.

Because of bizarre circumstances it is necessary to set forth our standard of review. At the time of review by the Court of Appeals, jurisdiction over this case was authorized by ORS 197.310(5) which allows an appeal by an aggrieved party from an adverse decision of LCDC. The appeal was to be taken in the manner provided in the Administrative Procedure Act, ORS 183.480. This section on appeals incorporated ORS 183.482, subsections (7) and (8), which state:

"(7)   Review of a contested case shall be confined to the record, the court shall not substitute its judgement for that of the agency as to any issue of fact. In the case of disputed allegations of irregularities in procedure before the agency not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a Master appointed by the court to take evidence and make findings of fact upon them.

"(8) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby; or

"(b) The statute, rule or order to be unconstitutional; or

"(c) The rule which the order enforces or upon which the order is based or dependent, is invalid under the provisions of subsection (3) of ORS 183.400; or

"(d) The order is not supported by substantial evidence in the whole record."

The statutes governing judicial review of land use proceedings were amended by the 1979 legislature. Review from the newly created Land Use Board of Appeals is to be taken according to subsection (8) of section 6(a), Oregon Laws 1979, chapter 772. However, this new procedure only affects "petitions for review of land use decisions to be filed on or after November 1, 1979." Oregon Laws 1979, ch 772, § 29. This petition was filed long prior to that date. This would mean that this court's scope of review would be that provided under ORS 197.310(5), as previously indicated, except that Oregon Laws 1979, chapter 772, also *repealed that section* during the pendency of this case before this court and before decision. Thus, the prior statute was repealed and the new one does not apply. Despite the repeal of ORS 197.310(5), the general provisions of the Administrative Procedure Act are applicable. The petitioner in this court, the proponent of the plat, was made a party to the proceeding before LCDC by intervention and was given a hearing. The proceeding thereby became a contested case under the Act by virtue of ORS 197.305(2) and 183.310(2)(d)[3] and was

---

[3] ORS 197.305(2) then provided:

"The commission shall adopt such rules, procedures and regulations as are appropriate for the conduct of review proceedings held
*(Continued on following page)*

reviewable as such under ORS 183.482(1). Therefore, the same sections from that Act, ORS 183.482(7) and (8), previously set forth, would still apply except that ORS 183.482(7) and (8) *have been amended* by Oregon Laws 1979, chapter 593, section 24. Subsections (7) and (8) now read as follows:

"(7) Review of a contested case shall be confined to the record, the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion. In the case of disputed allegations of irregularities in procedure before the agency not shown in the record which, if proved, would warrant reversal or remand, the Court of Appeals may refer the allegations to a Master appointed by the court to take evidence and make findings of fact upon them. The Court shall remand the order for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure.

"(8)(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency

---

*(Continued from previous page)*
pursuant to ORS 197.300, in accordance with the provisions of ORS 183.310 to 183.500 for hearings and notice in contested cases."

LCDC adopted the Attorney General's Model Rules of Practice and Procedure and Supplemental Rules to carry out this directive. See OAR 660-01-005 to 660-01-055, effective December 5, 1975, as LCD 5 and repealed by Administrative Order LCD 1-1978, effective January 19, 1978.

practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record."

The above sets forth our present scope of review and is applicable as of the 1979 amendments' effective date, even though the Court of Appeals' scope of review was governed by the statutes as they were before the amendments. This is in accordance with prior decisions of this court on the subject of retrospective application of statutes. As we pointed out in *Joseph v. Lowery,* 261 Or 545, 548-549, 495 P2d 273 (1972) after a review of cases, we have held that "procedural or remedial" statutes are applied restrospectively and "substantive" statutes are not, in the absence of a legislative indication to the contrary, but these are labels which are applied after the court has decided whether it thought the new statute affected legal rights and obligations arising out of past transactions. If they did, they were substantive and were not applied. It is clear here that we are not dealing with a "substantive" change. The statutory change deals only with the scope of this court's review, not with the rules upon which the litigants' rights are established and is, therefore, applicable to causes of action existing and litigation pending at the date of statutory change. *See Spicer v. Benefit Ass'n of Ry. Emp.,* 142 Or 574, 594, 17 P2d 1107, 21 P2d 187 (1933); *Judkins v. Taffe,* 21 Or 89, 92, 27 P 221 (1891). As it subsequently becomes apparent, however, insofar as this case is concerned, the change in our scope of review makes no difference.

We find that we do not need to consider the factual determination of futility because LCDC is not authorized to require exhaustion. LCDC and the Court of Appeals considered this case to present a matter of general law, determinable by reference to the body of decisions limiting a person's right to appeal to a court

before taking all possible steps before an agency. Both LCDC and the Court of Appeals recognized that this doctrine was applicable only by analogy. We conclude that it is not applicable at all, because the answer lies in the statutes governing review.

An agency has the powers conferred upon it by statute. Hypothetically, the legislature could instruct LCDC to review local subdivision decisions only if all the local remedies had been vigorously pursued. This course would minimize post-hoc intrusion into local land use planning. By the same token it could instruct LCDC to review decisions without regard to local exhaustion. This would ensure that the decisions, though locally made, would be consistent with state objectives. Or the legislature could leave the option to LCDC to formulate its own rule. As we read the statutes, in the present circumstances review is to be granted without procedural preconditions.[4]

This case was appealed to LCDC under ORS 197.300(b). ORS 197.300 states:

> "* * * the commission *shall* review upon:
>
> "* * * * *.
>
> "(b) Petition by a city, county, special district governing body, or state agency, a land conservation and development action taken by a state agency, city, county or special district that the governing body or state agency considers to be in conflict with state-wide planning goals * * *."

"Shall review" is absolute on its face. There is no indication in the statute of previous participation as a prerequisite to LCDC review. If an agency can cause an action to be reviewed though it has not invoked any prior procedure, it should also be able to cause the

---

[4] Appeals to the Land Use Board of Appeal under the new statute may now be subject to a requirement similar to exhaustion because of an amendment to the statute which became effective October 3 of this year. Or Laws 1979, ch 772, §§ 4-6.

action to be reviewed though it invoked only some of the procedure.[5]

Of course, conditions are sometimes read into statutes though the words provide no support for them. This should be done only where the condition is consistent with the legislative history and plainly appropriate for accomplishing the legislative purpose. Exhaustion as a precondition to LCDC review is not plainly desirable for this purpose. If seriously enforced, an exhaustion requirement would force the state agencies to monitor the activities of all state and local bodies and to make appearances wherever a decision could be made which would adversely affect them. Since many, one would hope most, of those decisions will be made in a manner consistent with the goals, the time and resources of the agency would be wasted. The legislature could have been concerned not to require this waste of effort.

Additionally, at least some in the legislature thought review was to be granted without condition. This conclusion is drawn from the legislative history of Oregon Laws 1977, ch 664, § 22, which amended ORS 197.300 to authorize petitions by state agencies.[6]

---

[5] There might be a reason specific to the circumstances of a case why participation in some proceedings should bar an appeal; this case does not present one.

[6] The full text, as enacted, is as follows:

"Section 22. ORS 197.300 is amended to read: "197.300. (1)   In the manner provided in ORS 197.305 to 197.315, the commission shall review upon:

"(a)   Petition by a county, *city, special district* governing body, *or state agency*, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation adopted by a state agency, city, county or special district that the governing body *or state agency* considers to be in conflict with state-wide planning goals approved under ORS 197.240 [or interim goals specified in ORS 215.515].

"(b)   Petition by a city [or], county, *special district* governing body, *or state agency,* a land conservation and development action taken by a state agency, city, county or special district that the governing body *or state agency* considers to be in conflict with state-wide planning goals approved under ORS 197.240 [or interim goals specified in ORS 215.515].

*(Continued on following page)*

The subcommittee which prepared the bill first added clauses authorizing *state agencies* to appeal under subsections (a) and (b).[7] It then considered an amendment to (d) which would have authorized citizens to petition for review of quasi-judicial decisions (land conservation and development actions).[8] As it stood (and stands), subsection (d) authorized citizens to attack only a "zoning, subdivision or other ordinance or regulation." The amendment was opposed by the chairman because the proposed right to petition was unqualified.[9] Proponents suggested adding language to allow a citizen to petition from quasi-judicial determinations only if the citizen had appeared before the planning commission and the county commission.[10] Of course, this is precisely what the county seeks to say is already in the statute. The chairman felt this was a substantial improvement but the amendment to (d) was nevertheless rejected. Implicit in the chairman's original objection is an assumption that the language otherwise allows petitions without exhaustion.

In addition, there is another reason why the concept of exhaustion is not appropriate to the present proceeding. LCDC is not in the position of an appellate

---

*(Continued from previous page)*

"(c)  Petition by a state agency, city, county or special district, any county governing body action that the state agency, city, county or special district considers to be improperly taken or outside the scope of the governing body's authority under ORS [197.005 to 197.430, 215.055, 215.510, 215.515, 215.535 and 469.305] *197.190, 197.225 and 197.260.*

"(d)  Petition by any person or group of persons whose interests are substantially affected, a comprehensive plan provision or any zoning, subdivision or other ordinance or regulation alleged to be in violation of state-wide planning goals approved under ORS 197.240 interim goals specified in ORS 215.515." (*Italicized* material added; [bracketed] material deleted.)

[7] Minutes, Senate Environment and Energy Committee, Subcommittee on Land Use, April 25, 1977, tape 2, Feet 195-580.

[8] *Id.* Feet 270-580.

[9] *Id.* Feet 470-580.

[10] In fact, in the 1979 legislature a similar rule was adopted. Or Laws 1979, ch 772, § 4, subsection (3).

court whose primary duty is deciding competing interests of litigants but, rather, it is an agency of government charged with monitoring land use decisions of other governmental bodies to make sure established standards are met. It is, therefore, inappropriate, in the absence of statutory direction, that an exercise of this function should be determined by the failure of an interested party to take a procedural step, such as processing an appeal.

In the face of language which implies and legislative history which contemplates that land conservation and development actions are reviewable without exhaustion of a possible appeal, and because of the nature of LCDC's function, we believe LCDC may not impose exhaustion if the planning commission decision otherwise was final without further local action. Therefore, under the amended provisions of ORS 183.482(7) and (8)(a)(B) previously set forth, this matter must be remanded by us to LCDC for decision because we find either "that the correctness of the action may have been impaired," as provided by subsection (7) or "that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action," as provided by subsection (8)(a).

The order of the Court of Appeals reversing the dismissal by LCDC and remanding the proceeding to it for further consideration is affirmed.