UNEMPLOYMENT INSURANCE
APPEAL BOARD, Appellee
Below, Appellant,

v.

DIVISION OF UNEMPLOYMENT
INSURANCE, Appellant
Below, Appellee.

No. 26, 2002.

Supreme Court of Delaware.

Submitted: April 23, 2002.
Decided: July 23, 2002.

Stephani J. Ballard, Esquire, Department of Justice, Wilmington, Delaware, for appellant.

Thomas H. Ellis, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

HOLLAND, Justice.

This proceeding originated with separate applications for unemployment benefits by two claimants, Georgette Schaefer ("Schaefer") and Patricia Whittier ("Whittier"). It involves a temporary cessation of employment due to financial unprofitability where the claimants are both not only employees, but also corporate officers of the business. It has led to different interpretations of the law by the appellee, the Department of Labor, Division of Unemployment Insurance (the "Department") and the appellant, the Unemployment Insurance Appeal Board (the "Board").

This matter presents an issue of first impression for this Court. The Superior Court held that Schaefer and Whittier were not entitled to receive unemployment benefits. The Superior Court entered a final judgment in favor of the Department that reversed a decision of the Board in favor of the claimants.

The Board has raised two contentions before this Court.[1] First, the Board argues that the claimants' status as employees, who are also corporate officers, does

---

1. The Board is a statutory party to all appeals from its decisions and is the appellant in this matter. Del.Code Ann. tit. 19, § 3323(a) (1995); *Robbins v. Glenn Deaton, Inc.,* Del.Super., C.A. No. 93A–05–001, 1995 WL 108888, Terry, J. (Feb. 6, 1995).

not preclude their eligibility for unemployment benefits since the applicable Delaware Unemployment Compensation Act specifically includes corporate officers within its purview. Second, the Board submits that the Superior Court erroneously held that the claimants were not entitled to unemployment benefits, given the applicable standard of judicial review, since there is substantial record evidence to support the Board's decision that the claimants were entitled to receive unemployment compensation benefits.

We have concluded that both of the Board's arguments are meritorious. Therefore, the judgment of the Superior Court must be reversed.

### Facts

In 1997, Schaefer and Whittier formed Bad Girls, Incorporated. The corporation's business is a restaurant known as Plumb Loco, located in Rehoboth Beach, Delaware. Schaefer is President of the corporation and owns fifty percent of the stock. Whittier is Vice–President and owns fifty percent of the stock. In addition to being officers and shareholders of the corporation, Schaefer and Whittier both work in the restaurant as employees.

As employees of the restaurant, the claimants were each paid wages based upon the amount of work performed. When they worked more hours in the summer, they earned more wages. The claimants reported their wages to the Department of Labor.[2] The restaurant business paid unemployment taxes on those wages.

In 1997, the claimants' restaurant was open from May through December. In 1998, the claimants closed the restaurant for the months of November and December. In the year 1999–2000, the claimants closed the restaurant for the winter from October 30, 1999 until April 1, 2000.

During the winter seasons when the claimants had left the restaurant open, the business operated at a loss. In the years prior to 2000, the claimants had to transfer their personal funds into the restaurant account to cover business expenses. The claimants submitted bank statements to document these facts. The claimants also presented evidence that many restaurants are closed at the Rehoboth Beach area in the winter due to the seasonal decline in patronage.

Because of the business' history of unprofitability, the claimants decided to close the restaurant at the end of September 2000 and planned to reopen in April 2001. It costs the business $6,000 to be closed and $11,000 to be open during the slow winter season. The $6,000 consists of rent. The savings result from the elimination of variable costs and payments to employees.

Although the claimants closed their business for several off-season months in 1998 and 1999, they did not file claims for unemployment compensation for those years. Their first application for benefits was in October 2000 and gave rise to this litigation.

### Procedural History

A Department of Labor Claims Deputy referred the claims by Schaefer and Whittier to an Appeals Referee for an initial determination of eligibility. The Appeals

---

**2.** Schaefer reported wages as follows for 2000: no wages for the first quarter; $5,097.14 for the second quarter; and $13,290 for the third quarter. Whittier reported wages as follows for 2000: no wages for the first quarter; $7,500 for the second quarter; and $22,500 for the third quarter. The claimants testified that the salary increases during the third quarter were due to the additional hours they worked during that quarter.

Referee held hearings for both claimants on November 15, 2000. Following the hearings, the Appeals Referee issued a decision, finding that each claimant was qualified for benefits. The Appeals Referee found that the claimants' voluntary termination of employment was for good cause attributable to the work, in that claimants' decision to close their business for the winter months was a sound business decision based upon profit and loss.

The Department appealed the decision of the Appeals Referee to the Board. A hearing was held before the Board on January 31, 2001. The Board also concluded that claimants were entitled to benefits. The Board issued a decision, dated February 20, 2001, affirming the decision of the Appeals Referee.

On February 26, 2001, the Department filed an appeal of the Board's decision to the Superior Court in and for Kent County. For jurisdictional reasons, that appeal was transferred to Sussex County. The Superior Court issued an opinion, dated December 19, 2001, reversing the decision of the Board and holding that claimants were not entitled to benefits because they were not "unemployed through no fault of their own."[3] The Board filed a timely notice of appeal with this Court.

### Unemployment Eligibility Generally

An "unemployed"[4] individual is eligible to receive benefits if the Department finds that all of the terms in title 19, section 3314 of the Delaware Code are met. This includes such factors as making a proper claim for benefits and being able and available for work. Notwithstanding the "eligibility" factors of section 3314, a claimant may be found to be "disqualified" from benefits if one of the factors in title 19, Section 3315 of the Delaware Code is present. These are factors such as being discharged from one's work for good cause or voluntarily terminating one's employment without good cause.

In this case, the Department did not dispute that the claimants met all of the eligibility factors in section 3314. Instead, the Department argues that the claimants were disqualified from benefits under section 3315(1) for voluntarily terminating their employment without good cause. It is well settled that a voluntary relinquishment of employment for good cause must be for reasons connected with the work and those reasons must be objectively reasonable.

### Employee Officer Eligibility

Both fact-finders, the Appeals Referee and the Board, found that the claimants voluntarily terminated their employment, but for good cause in connection with their work because their temporary cessation of employment was necessitated by external, economic forces beyond their control. In reversing the decision of the Board, the Superior Court focused on the claimants' role as decision-making corporate officers. The Superior Court held that their exercise of "control" as corporate officers precluded the claimants from demonstrating a voluntary termination of their *own* employment for good cause. There is no dispute that any non-officer employees who were terminated, when the restaurant closed for the winter, were eligible to receive unemployment benefits if they met all of the statutory requirements.

---

**3.** *Div. of Unemployment Ins. v. Schaefer,* Del.Super., C.A. No. 01A–04–003, 2001 WL 1719189 (Dec. 19, 2001), Mem. Op. at 7.

**4.** The term "unemployed," as well as other statutory terms, is defined at Del.Code Ann. tit. 19, § 3302 (1995 & Supp.2000).

The claimants, as wage-earning employees of the corporation, reported their wages and paid unemployment taxes on their own wages into the Unemployment Compensation Fund since 1997. The applicable Delaware statute specifically provides for corporate officer employees to be eligible for unemployment compensation by including their work within the definition of covered "employment:"

"Employment" means:

(A) ... service performed after December 31, 1977, including service in interstate commerce, by

(i) Any officer of a corporation after December 31, 1995.[5]

The same statute had previously *excluded* certain corporate officers (those with greater than one-fourth ownership interest) from the definition of "employment" and, therefore, from eligibility for benefits.[6] Effective with services performed after December 31, 1995, however, *all* corporate officer employees, including those with a significant ownership interest (such as the claimants) who were previously excluded from the statutory scheme were *included* with the change in the definition to "[a]ny officer of a corporation."[7]

■ The Superior Court held that the claimants, as officers, controlled their own employment status and were, therefore, disqualified from unemployment benefits. The Superior Court's holding, that an exercise of control by a corporate officer precludes a termination of their own employment for "good cause," is inconsistent with the General Assembly's amendment of the Delaware Unemployment Compensation Act to specifically include corporate officers within the statutory definition of "employment." The current statutory scheme provides that, despite their role as "decision-makers" who can "control" aspects of the business, unemployment claims by corporate officers are to be assessed in the same objective manner as claims made by other employees who are not corporate officers.[8]

■ The Department is validly concerned that corporate officer employees who make layoff decisions could attempt to abuse the unemployment insurance system. The General Assembly's statutory protection against the potential for systematic abuse by corporate officer employees is found in title 19, section 3315(1) of the

---

5. Del.Code Ann. tit. 19, § 3302(10)(A)(i) (1995).

6. Del.Code Ann. tit. 19, § 3302(9)(A)(i)(II)(1985), *amended by* 70 Del. Laws, ch. 229 (1995); *see Horack v. Unemployment Ins. Appeal Bd.*, Del.Super., C.A. No. 96A–02–010, Toliver, J. (Nov. 15, 1996), Op. and Order at 2, n. 2.

7. *See* 70 Del. Laws, ch. 229 (1995).

8. *See Dir., Dep't of Indus. Relations v. Ford*, 700 So.2d 1388 (Ala.Civ.App.1997) (economic forces constituted good cause for claimant to terminate his employment from his business); *Carlsen v. Unemployment Ins. Appeals Bd.*, 64 Cal.App.3d 577, 134 Cal.Rptr. 581 (1976) (claimant's control over the power to compensate himself did not render claimant ineligible for benefits so long as there was good cause to terminate his own employment);

*Bartelt v. Employment Appeal Bd.*, 494 N.W.2d 684 (Iowa 1993) (claimant's separation was not "voluntary" where he filed for bankruptcy, as the corporation's President, due to economic reasons); *Taylor v. Employment Div.*, 286 Or. 711, 597 P.2d 780 (1979) (claimant "unemployed" where his wage earning work ended but he continued to perform corporate duties); *Sullivan v. Employment Div.*, 42 Or.App. 581, 600 P.2d 965 (1979) (claimants' control, as sole owners of two corporations, over the timing of their compensation did not render them "employed" all year); *Dumont v. Hackett*, 120 R.I. 818, 390 A.2d 374 (1978) (claimant was "totally unemployed" where his wage earning work had slowed to a standstill but he was still soliciting business for his corporation for no pay).

Delaware Code. The section provides that an individual who relinquishes his or her employment will be disqualified from receiving unemployment compensation unless he or she does so for "good cause attributable to such work."[9] The causative factor for terminating employment must be *objectively* reasonable. The burden of proving compliance with section 3315(1) is on the claimant.[10]

### Standard of Review

The Delaware Unemployment Compensation Act sets forth the applicable standard of judicial review for a Board decision. "[T]he findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law."[11] This Court has held that the sole function of the reviewing courts on appeal from an administrative board "is to determine whether or not there was substantial competent evidence to support the finding of the Board, and, [if so], to affirm the findings of the Board."[12]

The Board correctly acknowledged "that 'employment' for purposes of eligibility includes services performed by 'any officer of a corporation after December 31, 1995.'"[13] The Board found that claimants were corporate officers and employees who had paid assessments into the unemployment fund and reported wages for themselves as employees. The Board held that,

as corporate officers, the claimants were eligible for benefits in the same objective manner as other employees, if the other statutory standards for compensation were met. Since the Board properly construed the Delaware Unemployment Compensation Act, the only question for judicial review was whether substantial competent evidence in the record supported the Board's findings that the claimants were eligible to receive unemployment benefits.

### Substantial Record Evidence

The claimants testified that they had, in previous years, tried to keep their beach restaurant open year-round, but had operated at a financial loss during the winter months. The claimants testified and provided bank statements showing that in previous winters they had to transfer their personal money into the business accounts to meet expenses. The claimants testified about the general lack of business at beach restaurants during the winter season. The Board accepted and relied upon this evidence in support of its decision.

In these proceedings, the Department has consistently argued that claimants engaged in a bad faith, "considered plan" to obtain "a subsidy from the state" in the form of unemployment insurance benefits. Nevertheless, the Appeals Referee concluded that the claimants had good cause to close the business during the winter to avoid financial losses to their business and

---

9. Del.Code Ann. tit. 19, § 3315(1) (Supp. 2000).

10. *Moore v. Fulton Paper Co.*, 1995 WL 389765, at *2, 1995 Del. LEXIS 230, at *4 (Del.Supr.); *accord Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 692 (Del.Super.Ct.1971), *aff'd*, 293 A.2d 295 (Del. 1972).

11. Del.Code Ann. tit. 19, § 3323(a) (1995).

12. *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del.1965).

13. Del.Code Ann. tit. 19, § 3302(10)(A)(i) (1995). The predecessor statute did not allow an individual who owned one-fourth or more of the ownership interest in the corporation during the employment to collect benefits. *See Horack v. Unemployment Ins. Appeal Bd.*, Del.Super., C.A. No. 96A–02–010, Toliver, J. (Nov. 15, 1996), Op. and Order at 2, n. 2.

to enable it to remain profitable. The Board, as the ultimate fact-finder also rejected the Department's argument, finding the claimants' testimony and evidence to be credible that the temporary closing of the business was impelled by economic factors, explicitly "finding that claimants acted in good faith." [14]

The Superior Court concluded that the "claimants' respective states of unemployment [were] matters over which the claimants had control and result[ed] from a deliberate decision to tailor the terms of employment, and particularly, compensation, in such a way as to avail themselves of unemployment compensation benefits." [15] The claimants' intentions or motives rest on a determination of their credibility. These issues were resolved in the claimants' favor by the Board, as the finder of fact. Questions of credibility are exclusively within the province of the Board which heard the evidence. As an appellate court, it was not within the province of the Superior Court to weigh the evidence, determine questions of credibility or make its own factual findings.

The Board found that the claimants made a sound business decision to close their business for the winter due to financial unprofitability and, as such, left work for good cause attributable to the work. The Board's findings that claimants acted in good faith and were motivated by adverse economic factors beyond their control are supported by substantial competent evidence. Accordingly, the Board properly decided that the claimants were entitled to receive unemployment insurance benefits.

### Conclusion

The judgment of the Superior Court is reversed. This matter is remanded for further proceedings in accordance with this Opinion.

---

14. *Schaefer*, Nos. 717987/717988, (Del. Dep't Labor, UIAB Jan. 31, 2001) (decision).

15. *Div. of Unemployment Ins. v. Schaefer*, Del.Super., C.A. No. 01A–04–003, 2001 WL 1719189 (Dec. 19, 2001), Mem. Op. at 7.